UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEDSCHROEF DETROIT CORPORATION,
NEDSCHROEF HERENTALS N.V., and
KONINKLIJKE NEDSCHROEF
HOLDINGS B.V.,

        Plaintiffs,        Civil Case No. 14-10095
                                                  Honorable Linda V. Parker

v.

BEMAS ENTERPRISES LLC, MARC
A. RIGOLE, and BERNARD E. LEPAGE,

        Defendants.
_____/

**OPINION AND ORDER (1) GRANTING PLAINTIFFS' MOTION FOR CONTEMPT [ECF NO. 51] AND (2) DENYING AS MOOT PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY NON-PARTY TRILLIUM ENTERPRISES LLC SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH SUBPOENA [ECF NO. 55]**

Plaintiffs initiated this lawsuit after discovering that Defendants Marc A. Rigole ("Rigole") and Bernard E. LePage ("LePage"), former employees of Plaintiff Nedschroef Detroit Corporation ("Nedschroef Detroit"), had formed a competing business, Bemas Enterprises LLC ("Bemas"), while still working for Nedschroef Detroit. Rigole and LePage formed Bemas under their wives' names, respectively Christiane VanLooveren ("VanLooveren") and Cynthia Lupu LePage ("Lupu"). Plaintiffs filed a motion for summary judgment, which this Court

granted in an Opinion and Order entered May 22, 2015.  (ECF No. 43.)  The Court entered a Judgment on October 7, 2015, although an Amended Judgment also was entered December 1, 2015.[1]  (ECF Nos. 48, 89.)  Both judgments provide as follows:

> A. Defendants, their agents, servants, employees, employers, attorneys, and all persons in active concert or participation with any of them, are enjoined and restrained from providing replacement parts or services for Nedschroef machines in North America;
>
> B. Defendants shall destroy all designs, drawings, customer lists and other property in their possession that belong[] to Plaintiffs; and
>
> C. Defendants shall pay, jointly and severally, the total sum of $3,680,344.18 to Plaintiffs.

(ECF Nos. 48, 89.)  The Sixth Circuit Court of Appeals affirmed the Court's decision on April 22, 2016.

In the meantime, on October 28, 2015, Plaintiffs filed a Motion for Order to Show Cause Why Defendants and their Spouses Should not be Held in Contempt for Violating [the] Permanent Injunction.  (ECF No. 51.)  Soon thereafter,

---

[1] In its summary judgment decision, the Court awarded Plaintiffs $3,680,344.18, which included the amount Plaintiffs requested for an award of costs, but not the amount they requested for attorneys' fees.  While the Court granted Plaintiffs' request for attorneys' fees, it found insufficient information to determine whether the fees sought were reasonable.  (ECF No. 47 at Pg ID 942.)  The Court therefore provided Plaintiffs an opportunity to submit additional materials to support their request (*id*), which Plaintiffs submitted on October 19, 2015.  (ECF No. 50.)  The Court therefore entered an Amended Judgment, including the $171,287.50 attorneys' fees award Plaintiffs sought.  (ECF No. 89.)  This increased the total judgment awarded to Plaintiffs to $3,853.247.18.  (*Id*.)

2

Plaintiffs filed a motion asking the Court to hold in contempt Trillium Enterprises, LLC ("Trillium")-- a new company Plaintiffs formed through their wives to carry on their business in lieu of Bemas-- based on Trillium's failure to comply with a subpoena.[2] (ECF No. 55.) Plaintiffs' motions have been fully briefed. The Court held an evidentiary hearing with respect to Plaintiffs' motions on March 16, 2016.

Finding that Bemas, Rigole, LePage, VanLooveren, and Lupo, individually and through Bemas and Trillium, are in violation of the Court's permanent injunction, the Court grants Plaintiffs' motion for contempt. Because Plaintiffs informed the Court that Trillium has agreed to allow its corporate representative to be deposed and that Plaintiffs no longer are pursuing the electronically stored information from Trillium sought in their subpoena, the Court finds moot Plaintiffs' motion to hold Trillium in contempt.

## Applicable Standards

A decision on a motion for contempt lies within the sound discretion of the court. *See Elec. Workers Pension Trust Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). While the Supreme Court has

---

[2] Plaintiffs also filed a motion seeking a court order to forcibly enter Defendants' homes to seize nonexempt personal property to satisfy the Judgment, to prevent Defendants and their wives from concealing, transferring, or disposing of any assets, including joint assets, and to sanction Defendants for destroying a computer server that was subject to Plaintiffs' discovery requests and which Plaintiffs believe contained proof of Defendants' contempt conduct. (ECF No. 100.) The Court will address that motion in a separate decision.

advised courts to use their contempt power "sparingly," it also has stated that "the power to punish for contempt is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911); *see also Gary's Elec. Serv.*, 340 F.3d at 378. Contempt proceedings are used to "enforce the message that court orders and judgments are to be complied with in a prompt manner." *Gary's Elec. Serv.*, 340 F.3d at 378. In civil contempt proceedings, judicial sanctions may be imposed for either or both of two purposes: to coerce the defendant into compliance with the Court's order and to compensate the movant for the losses sustained. *Id*. at 379 (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).

To hold a litigant in contempt, the movant must produce clear and convincing evidence to show a violation of a definite and specific order of the court requiring the litigant to perform or refrain from performing a particular act or acts with knowledge of the court's order. *Id*. (citing *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)). "Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Id*. (emphasis in original). To meet the burden of production in the Sixth Circuit, contemnors must show " 'categorically and in detail' " why they are

unable to comply with the Court's order. *Id*. (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716 720 (6th Cir. 1996)). The court must consider whether the contemnor took all reasonable steps within his power to comply with the court's Order. *Id*. Where the contempt arises from the individuals failure to pay a judgment award, the contemnor must show that he is not responsible for his present inability to pay. *Id*. at 383.

## Findings

As this Court found in its decision granting Plaintiffs' motion for summary judgment, Rigole, LePage, VanLooveren, and Lupo, formed Bemas under VanLooveren's and Lupo's names in about June 2011. (ECF No. 43 at Pg ID 874.) VanLooveren and Lupo, however, never participated in the daily operations of Bemas and knew little about Bemas' business. (*Id*.) Rigole and LePage in fact ran the business, selling goods and performing services on Bemas' behalf beginning in mid-June 2011, while still employed by Nedschroef. (*Id.* at Pg ID 874-75.) The goods sold were replacement parts for Nedschroef machines and the services performed were on Nedschroef machines. (*Id*.) As stated earlier, the Court's permanent injunction enjoined Defendants *and "their agents . . . and all persons in active concert or participation with any of them* . . . from providing replacement parts or services for Nedschroef machines in North America." (ECF

No. 89 at Pg ID 1323, emphasis added.)  The Court also awarded Plaintiffs a judgment against Defendants in the amount of $3,853.247.18.  (*Id.* at Pg ID 1324.)

At the evidentiary hearing and in the exhibits attached to their contempt motions, Plaintiffs established by a preponderance of the evidence the following additional facts:

1. Rigole, LePage, VanLooveren, and Lupo were aware of the injunction and understood that it applied to each of them.  (3/16/16 Hr'g Tr. at 35-36, 45, 77-78, 102-05, ECF No. 114.)

2. Other than a small amount garnished from a bank account, Defendants have not made any payments toward the Judgment awarded to Plaintiffs.  (*Id.* at 118-19.)  Defendants still owe Plaintiffs over $3.8 million.  (*Id.*)

3. Rigole and LePage were employees of Bemas through at least December 31, 2015.  (*Id.* at 80, 117.)  They each received $5,000 per month from Bemas through that date.  (*Id.* at 80, 117-118.)

4. Rigole, LePage, VanLooveren, and Lupo continued to operate under the name Bemas through December 31, 2015, providing replacement parts for Nedschroef machines.  (*Id.* at 28-29, 46, 50, 52-54, 57, 62, 80, 85-86, 117, 119-22.)

5. Shortly after the Court's May 22, 2015 decision and entry of Judgment, Bemas issued a check in the amount of $15,000 to VanLooveren and another check for $10,000 to VanLooveren and Rigole. (*Id.* at 74, 75, Hr'g Exs. 41, 42.) These payments were not made in the regular course of Bemas' business. (3/16/16 Hr'g Tr. at 75.)

6. Shortly after the Court's May 22, 2015 decision and entry of Judgment, Rigole, LePage, VanLooveren, and Lupo decided to form a new company, Trillium, through which they agreed to supply replacement parts for Nedschroef machines. (*Id.* at 43, 59-60-82-83, 89, 136-37.) Their decision was in direct response to the Court's injunction against Bemas, and Trillium's business was a continuation of the same business Bemas conducted. (*Id.* at 43, 57, 59, 89, 92, 130-36 170; Hr'g Exs. 2, 3, 12-15, 51, 87.)

7. VanLooveren and Lupo are listed as the owners and operators of Trillium, and as its employees. (3/16/16 Tr. at 36, 57, 138; Hr'g Ex. 1.) They also are identified as its officers and agents. (*Id.*)

8. While VanLooveren and Lupo claim to run the day-to-day operations of Trillium (*see* 3/16/16 Tr. at 37, 58, 71-72, 90, 138), the evidence introduced reflects that they know little about the goods and services

7

provided by Trillium and that Rigole and LePage are really the individuals running the operation. (*See* Hr'g Exs. 13-18, 20-24, 72, 80; 3/16/16 Tr. at 22-23, 41, 61-62, 73-74, 88-89, 94-95, 139-40

9. After Trillium's formation, it filled multiple purchase orders issued to Bemas for delivery in North America. (Hr'g Exs. 5-7, 9-11.)

10. Sometime in 2015, Bemas transferred its inventory and approximately $81,000 to either Trillium or VanLooveren and Lupo. (*Id*. Ex. 48; 3/16/16 Hr'g Tr. at 124-29.)

11. Through at least March 2016, Trillium provided replacement parts for Nedschroef machines in North America. (Hr'g Exs. 55-61, 63-64, 82, 93; 3/16/16 Tr. at 129, 146-50.)

12. Rigole, LePage, and their wives maintain that Trillium is providing "tooling" for Nedschroef machines, which they attempt to distinguish from the "replacement parts" covered by the Court's injunction. The Court, however, finds that "tools," "tooling," and "replacement parts" are terms used to describe many of the exact same goods and that these goods are designed for Nedschroef machines. (3/16/16 Hr'g Tr. at 11-14, 33, 39, 107, 109-13,, 120, 153-55; Hr'g Exs. 66-68.)

13. After May 22, 2015, Trillium provided services for Nedschroef machines in North America. (Hr'g Exs. 7, 30, 53, 72; 3/16/16 Hr'g Tr. at 22-23, 41, 94-95.)

14. Nedschroef's drawings are confidential and proprietary, containing warnings against reproduction, and are password protected. (3/16/16 Hr'g Tr. at 14-15.) It is Nedschroef's policy not to give its confidential and proprietary drawings to customers, and Nedschroef derives economic value from keeping them out of the public domain. (*Id*. at 14-15, 33.)

15. After May 22, 2015, Trillium converted Nedschroef's proprietary property for Trillium's use by reproducing and forwarding Nedschroef's confidential drawings, including those previously marked: "This drawing is property of Nedschroef. No reproduction without written permission." (*Id*. at 18-21, 96-97, 141-144, 163-64; Hr'g Exs. 20-24, 56, 74-76.)

In short, the evidence presented at the hearing reflects that Rigole, LePage, VanLooveren, and Lupo-- through Bemas and then Trillium-- knowingly and willfully violated the Court's permanent injunction and have taken steps to avoid paying the Judgment against them and to conceal their assets and earnings. Defendants, VanLooveren, and Lupo have come forward with no credible evidence

9

to rebut the showing of contempt or to explain why they are unable to comply with the Court's injunction or Judgment. The evidence instead reflects only their unwillingness to do so.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Order to Show Cause Why Defendants and Their Spouses Should not be Held in Contempt for Violating Permanent Injunction (ECF No. 51) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Order to Show Cause Why Non-Party Trillium Enterprises, LLC Should not be Held in Contempt for Failure to Comply with Subpoena (ECF No. 55) is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Defendants Bemas Enterprises LLC, Marc Rigole, and Bernard LePage, as well as Christiane VanLooveren, Cynthia LePage Lupo, and Trillium Enterprises, LLC, are **IN CONTEMPT** of this Court's previous orders enjoining Defendants "and all persons in active concert or participation with them" from providing replacement parts or services for Nedschroef machines in North America;

**IT IS FURTHER ORDERED** that the permanent injunction is specifically extended to Christiane VanLooveren, Cynthia Lupu LePage, Trillium Enterprises, LLC, and *any other entity* with which Defendants, Christiane VanLooveren, and/or

10

Cynthia Lupu LePage now have or may in the future have an employment, ownership, or other relationship;

**IT IS FURTHER ORDERED** that as sanctions for their contempt, the judgment against Defendants in the amount of $3,853,247.18 is applied, jointly and severally, against Christiane VanLooveren and Cynthia Lupu LePage, in their individual and corporate capacities, and against Trillium;

**IT IS FURTHER ORDERED** that Bemas Enterprises, LLC and Trillium Enterprises, LLC are ordered to disgorge to Plaintiffs all profits made since the Court issued its May 22, 2015 permanent injunction, and Plaintiffs are awarded treble the amount of such profits;

**IT IS FURTHER ORDERED** that Marc Rigole, Bernard LePage, Christiane VanLooveren, and Cynthia Lupu LePage are ordered to disgorge all compensation and other payments Bemas or Trillium paid to them since May 22, 2015;

**IT IS FURTHER ORDERED** that Marc Rigole, Bernard LePage, Christiane VanLooveren, Cynthia Lupu LePage, and Trillium Enterprises, LLC are ordered to pay, jointly and severally, the costs and attorneys' fees incurred by Plaintiffs since the Court issued the May 22, 2015 permanent injunction;

**IT IS FURTHER ORDERED** that Marc Rigole, Bernard LePage, Christiane VanLooveren, Cynthia Lupu LePage, Bemas Enterprises, LLC, and

Trillium Enterprises, LLC are ordered to turn over to Plaintiffs all designs, drawings, customer lists, and other property in their possession that belong to Plaintiffs.

The Court retains jurisdiction to enforce the permanent injunction and this Order, and permits Plaintiffs to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure to ensure compliance with the permanent injunction and this Order. The parties may submit supplemental briefing on the amount of profits made by Bemas Enterprises, LLC and Trillium Enterprises LLC in violation of the injunction; compensation paid by Bemas and Trillium to Marc Rigole, Bernard LePage, Christiane VanLooveren, or Cynthia Lupu LePage since May 22, 2015; and costs and attorneys' fees incurred by Plaintiffs since the Court issued the May 22, 2015 permanent injunction.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 13, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 13, 2016, by electronic and/or U.S. First Class mail.

s/ Kelly Winslow for Richard Loury
Case Manager